| | |
|---|---|
| Schedule B–3 | $ 6,300.00 |
| Schedule B–1 | +45,000.00 |
| | $ 51,300.00 |

Less: Items assessable against Debtor's Real Property

**In re William A. WISNER, Morgan F. Wisner, Debtors.**

**Bankruptcy No. 87–00425.**

United States Bankruptcy Court, N.D. New York.

Sept. 4, 1987.

| | |
|---|---|
| Signal Secured claim | − 23,122.13 |
| | 28,177.87 |
| Broker's commission (6 percent) | − 2,700.00 |
| | 25,477.87 |
| Debtor's Homestead Exemption | − 10,000.00 |
| Gross available for unsecured claims | 15,477.87 |
| Less: Trustee's Compensation (Code § 326) | − 644.34 |
| Net available for Unsecured Claims | $ 14,833.53 |

Pelland & Shockey, Syracuse, for Wickes Lumber; David W. Pelland, of counsel.

Jay H. Ledden, Baldwinsville, N.Y., for debtor.

Warren V. Blasland, trustee, Syracuse, N.Y.

## MEMORANDUM–DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Wickes Lumber, a Division of Wickes Companies, Inc. ("Wickes"), has filed its objection to confirmation of the Chapter 13 plan proposed by William A. and Morgan F. Wisner ("Debtors") pursuant to § 1321 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). At item 11(b) of Debtors' Chapter 13 statement, filed along with their petition for relief on March 31, 1987, Wickes is identified as the holder of an unsecured claim in the amount of $2,368.00 against Mr. Wisner only. In their plan, Debtors propose 100% payment to holders of secured claims "outside the plan", with 50% payment to holders of unsecured claims "under the plan".

Wickes contends it holds a claim secured by an interest in real property owned by Debtors, and consequently, the plan's proposed treatment of its claim is in contradiction to Code § 1325(a)(5). Wickes claims that on May 7, 1986, pursuant to Article 2 of the New York Lien Law, § 10 (McKinney 1966 and Supp.1987) ("Lien Law"), it filed a Notice of Mechanics' Lien in the amount of $3,000.00 in the County Clerk's office of Oswego County, New York, against the real property serving as Debtors' residence. As the claimed lien is statutory, not judicial, Wickes urges that Debt-ors may not rely upon Code § 522(f) to avoid its lien.

On or about August 26, 1985, Wickes and Mr. Wisner individually, and d/b/a Custom Built Storage Sheds, entered into a commercial credit arrangement. Mrs. Wisner was not a party to the contract. Generally, the contract established a credit account between the parties, and pursuant to the agreement, Wickes delivered building materials to the Debtors' residence commencing February 2, 1986 and ending February 22, 1986.

Wickes filed a proof of secured claim on June 23, 1987 in the amount of $2,368.00, together with interest thereon from January 13, 1987. The Court notes this date is at odds with either of the February, 1986 dates referenced in the Notice of Mechanics' Lien. In any event, Debtors have indicated that the market value of their residence is $50,000.00. Norstar Bank holds a first mortgage interest in the property in the amount of $38,000.00, with apparent equity in the property of $12,000.00.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 1334, and 28 U.S.C. § 157(a) and (b)(2)(B), (K), and (L).

## QUESTIONS PRESENTED

1. Is a debt secured by a mechanics' lien against a debtor's real property a secured claim pursuant to Code § 506?

2. May a claim secured by a mechanics' lien on a debtor's residence, which admittedly impairs the homestead exemption, be avoided by use of Code § 522(f)?

## CONCLUSIONS OF LAW

■ Code § 506(a) provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such credi-

tor's interest ... is less than the amount of such allowed claim.

Code § 101(33) defines a "lien" as "a charge against or interest in property to secure payment of a debt or performance of an obligation."

Section 3 of the Lien Law provides:

A ... materialman ... who ... furnishes materials for the improvement of real property with the consent or at the request of the owner thereof ... shall have a lien for the principal and interest, of the value, or the agreed price, of such ... materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter.

In the present case, Wickes held the status of a "materialman" when it furnished material to the Debtors.[1]

■ When Wickes filed its Notice of Mechanics' Lien on May 7, 1986, a lien in its favor arose against the Debtors' residential real property. This lien is one the Code recognizes, and entitles Wickes to status as holder of a secured claim.

■ The question then becomes whether a debtor may avoid a mechanics' lien by use of Code § 522(f). This Code section allows the avoidance of the fixing of a lien on the debtor's interest in property to the extent the lien impairs an exemption. The Code authorizes debtor lien avoidance in two situations: where the lien is a judicial lien, or where the lien is a nonpossessory, non-purchase money security interest in any of a broad array of personal property. *See* Code § 522(f)(1) and (2)(A)–(C).

In contrast to judicial liens, defined by Code § 101(32) as "lien[s] obtained by judgment, levy, sequestration, or other legal equitable process or proceeding," are statutory liens, or those "arising solely by force of a statute on specified circumstances or conditions." Code § 101(47). The express language of the Code is clear—a debtor may avoid only the attachment of the for-

mer liens, with the latter type surviving the debtor's discharge, whether or not they impair an exemption, here, the homestead exemption provided by Code § 522(b)(1), and New York Civil Practice Law and Rules § 5206 (McKinney 1978 and Supp. 1987).

In order to determine whether Wickes' mechanics' lien is judicial or statutory, it is appropriate to first consider New York state law to see whether the lien is created by operation of statute. *City of New York v. Hall*, 139 F.2d 935, 936 (2d Cir.1944). In *Umbaugh Builders, Inc. v. Parr Co. of Suffolk, Inc.*, 86 Misc.2d 1036, 385 N.Y. S.2d 698 (N.Y.Sup.Ct.1976), the court questioned whether the amount of a mechanics' lien was governed by a contract price, or the reasonable value of the labor performed or materials furnished. As a starting point in its analysis, the court noted "[m]echanics liens have their derivation entirely in statutory law, existing neither at common law nor in equity." *Id.*, 86 Misc. at 1036, 385 N.Y.S.2d at 700. After considering the quoted material from § 3 of the Lien Law set forth above, the court determined that the measure of a mechanics' lien is the value added to the property, rather than a contract price. In a bankruptcy context, similar observations have been made by other courts concerning the statutory basis of mechanics' liens.

In a case concerning the former Bankruptcy Act, and an earlier version of the current Lien Law, the United States Court of Appeals for the Second Circuit discussed the bankruptcy court's power to recognize a mechanics' lien which the creditor had failed to continue beyond the initial one year after the original filing. The Court of Appeals noted, "Mechanics' liens are creatures of the law of the state where the real property is situated—in the present case New York—and that law governs the method whereby they may continued *as well as the mode of their creation*." *In re Wil-*

---

1. It is of no consequence that only Mr. Wisner was a party to the contract with Wickes. Section 3 of the Lien Law presumes an agency relationship between husband and wife, unless

the non-contracting spouse provides written notice of refusal to consent to the improvement within ten days after learning of the contract with the materialman.

*lax,* 93 F.2d 293, 295 (2d Cir.1937) (emphasis added).

In two Bankruptcy Act decisions of the United States Court of Appeals for the Fifth Circuit, the Florida mechanics' lien statute was recognized as one which created a purely statutory lien. *Avdoyan v. Davis Water & Waste Indus., Inc. (Matter of Lowery Bros., Inc.),* 589 F.2d 851, 860–1 (5th Cir.1979); *York Corp. v. Brock,* 405 F.2d 759, 761 (5th Cir.1969). The genesis of mechanics' liens in state statutes was also recognized in *American Coal Burner Co. v. Merritt,* 129 F.2d 314, 316 (6th Cir. 1942). Other federal court decisions which concerned the source of mechanics' liens within the purview of the former Bankruptcy Act also reached the same conclusion. *See, e.g. Matter of Romanac,* 245 F.Supp. 882, 884–85 (W.D.Va.1965), *aff'd. National Bank and Trust Co. v. Allied Supply Co.,* 386 F.2d 225 (4th Cir.1967) (laws of Virginia); *Goodyear Tire and Rubber Co. v. Jones,* 317 F.Supp. 1285, 1289 (D.Kan. 1968), *aff'd.* 433 F.2d 629 (8th Cir.1970) (laws of Kansas).

In cases decided under the Code, all have acknowledged Congress' intent that the definition of statutory lien, "derived from current law," include those not based upon agreement or judicial action. "Mechanics', materialmen's and warehousemen's liens are examples [of statutory liens]. Tax liens are also included in the definition of statutory lien." H.R.Rep. No. 595 95th Cong. 1st Sess 314 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6271; S.Rep. No. 989, 95th Cong. 2d Sess. 27 (1978) *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5787, 5813. Bankruptcy courts have furthered the Congressional intent when analyzing the mechanics' lien laws of Florida, *In re Piambino,* 45 B.R. 243, 244 (Bankr.S.D.Fla.1984), Massachusetts, *Evans Products Co. v. Ribeiro (In re Ribeiro),* 7 B.R. 359, 361 (Bankr.D. Mass.1980), Connecticut, *Reardon v. De-Gregorio (Matter of Reardon),* 10 B.R. 697, 699 (Bankr.D.Conn.1981), and Oregon, *Zerger v. Wilmeth (In re Zerger),* 35 B.R. 42, 43 (Bankr.D.Ore.1983). The Court similarly construes the laws of the state of New York, and holds that mechanics' liens created by operation of Art. 2 of the Lien Law are not subject to avoidance by a debtor pursuant to Code § 522(f).

In consequence of the above, it is

ORDERED:

1. Wickes is the holder of an allowed claim secured by an interest in the Debtors' real property residence in the amount of $2,368.00, together with contractual interest thereon from February 22, 1986, the date materials were last delivered to the Debtors' residence. Because the records herein reveal equity in the property, and because the agreement between Wickes and Mr. Wisner provide for the same, Wickes is also entitled to attorney's fees as part of its allowed secured claim. Code § 506(b). The Court will determine the reasonableness of any such fees upon Wickes' submission of an accounting detailing the same. Any and all interest and attorneys' fees shall be allowed to the extent they do not exceed the Debtors' equity in the property, keeping in mind the mortgage interest of Norstar Bank.

2. Wickes' claim is not avoidable by Debtors under Code § 522(f)(1).

3. Confirmation of Debtors' plan is denied, as the plan does not comply with Code § 1325(a)(5) with respect to the treatment of Wickes' claim.